UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANDREI CHIZH,

                      Plaintiff,

       -against-

POLISH & SLAVIC FEDERAL CREDIT UNION,

                      Defendant,

------------------------------------------------------------x

**MEMORANDUM and ORDER**

10-CV-1505 (SLT) (LB)

**TOWNES, United States District Judge:**

*Pro se* Plaintiff Andrei Chizh brings this action pursuant to the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ("the ECOA"), alleging that Defendant Polish & Slavic Federal Credit Union ("PSFCU," or "the Credit Union") unlawfully discriminated against him on the basis of national origin when it denied his application for membership in 2010. Plaintiff seeks relief for the emotional harm this denial allegedly caused, and asks this Court to order Defendant to cease the allegedly discriminatory treatment. Defendant now moves for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons below, the motion is granted.

## I. BACKGROUND

### A. Facts

The parties' Rule 56.1 Statements alone present a limited sketch of the facts in this case, so the Court has taken additional facts from the parties' pleadings and moving papers. These facts are not in controversy unless otherwise indicated and are construed in the light most favorable to Plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001).

The Polish & Slavic Federal Credit Union describes itself as the largest ethnic credit union in the United States, with fourteen branches in four states, seventy-thousand members, and over one billion dollars in assets. *See* About Us – Polish & Slavic Federal Credit Union, https://en.psfcu.com/About_Us_23.html (last visited June 28, 2011). It offers checking and savings accounts, issues mortgage and personal loans, and provides other banking services for its members. (Aff. of Paul Sosnowski, dated Nov. 3, 2007 ("Sosnowski Aff.") ¶ 6). Credit Union members may immediately open a deposit account; separate procedures and application forms are required for other services. (Pl.'s Resp. to Def.'s Rule 56.1 Statement ("Pl.'s Resp.") ¶ 6; Sosnowski Aff. ¶¶ 9, 15). PSFCU limits its field of membership to members of several Polish ethnic organizations. (Def.'s Mem. Ex. M). New applicants to the Credit Union are offered applications to these organizations, if they are not members already. (Aff. of Alina Jucha, dated Nov. 2, 2010 ("Jucha Aff.") ¶ 6).

On January 6, 2010, Plaintiff entered the Maspeth, Queens, New York branch of the PSFCU, and employee Hanna Olszowska invited him to her table. According to Plaintiff, she asked him to identify his nationality, and he responded that he was Belarusian. When she recommended he fill out an application to the Polish Cultural Foundation in order to proceed with his application for membership in the Credit Union, Plaintiff claims to have responded that he was not Polish but perhaps would be eligible to join an ethnic organization called the Polish and Slavic Center. Confused as to whether Belarus was a Slavic nation, Olszowska conferred with her supervisor, Alina Jucha, in another room. (Compl. at 2). The two employees returned and asked Plaintiff for identification. Plaintiff provided, among other things, a driver's license, a letter from U.S. Citizenship and Immigration Services, and an expired Belarusian passport.

According to the complaint, the employees told Plaintiff that the documents did not meet their standards, and referred him to the Compliance Department. (Compl. at 2).

Five days later, Plaintiff sent an email to Olszowska, reporting that a supervisor had said someone would contact him about his request, and asking if he could return to "open accounts." (Def.'s Mem. Ex. E). Olszowksa did not respond. (Pl.'s Resp. ¶ 7). Frustrated with his inability to open an account, Plaintiff claims to have spoken with the PSFCU's Compliance Department by telephone. (Pl.'s Resp. ¶ 7). In a letter dated January 11, 2010, the PSFCU Compliance Department denied Plaintiff's application for membership, explaining to Plaintiff only that "information gathered during the application process did not meet the credit union underwriting standards for new membership account." (Def.'s Mem. Ex. J).

Plaintiff returned to PSFCU on three other occasions, and he was told each time that he lacked the proper paperwork required for membership, such as a permanent resident card and some kind of bill, or proof of membership in one of the ethnic organizations. (Compl. at 2). According to his complaint, Plaintiff presented proof of membership in the Polish and Slavic Center in his final visit to PSFCU on March 10, 2010, but the Credit Union again turned him away. (*Id.*)

### B. Procedural History

On September 13, 2010, Plaintiff commenced this action. Plaintiff alleges that Defendant discriminated against him on the basis of national origin, denying his application for membership in PSFCU—a precondition for applying for credit—because he was born in Belarus. (Pl.'s Aff. at 3). Such a ground for rejection, Plaintiff argues, constitutes a violation of the ECOA.

During a May 27, 2010, pretrial conference before Magistrate Judge Lois Bloom, defense counsel, Denise Singh-Skeete, remarked, "I was told by the credit union, Polish and Slavic, they

3

would eliminate [Plaintiff] based on the fact that [he is] not Polish and that [he is] not Slavic." (May 27, 2010, Tr. at 11). However, Ms. Singh-Skeete recants this testimony in her Reply Affidavit, claiming she did not have first-hand knowledge of what the employees told Plaintiff, and that the Credit Union's initial rejection of Plaintiff's application stemmed from his lack of proper identification and physical address. (Reply Aff. of Denise Singh-Skeete, Esq., dated Dec. 10, 2010 ¶¶ 7-10).

Indeed, two PSFCU employees submitted affidavits attesting that Plaintiff's national origin would not be a barrier to membership. (*See* Jucha Aff. ¶ 6; Aff. of Joanna Adamska, dated Nov. 2, 2010 ("Adamska Aff.") ¶ 4). After conferring as to whether Belarus was in fact a Slavic nation, they told him his membership would be contingent on his joining one of the ethnic sponsor organizations. (Jucha Aff. ¶ 6). Citing the USA-PATRIOT Act, Pub. L. No. 107–56, 115 Stat. 272 (2001), they allege that they denied Plaintiff's application because he raised "red flags." (Adamska Aff. ¶ 10). For example, the passport he presented had expired, his driver's license listed a post office box rather than a physical address, the copy of his bank statement was of extremely poor quality, and he showed the employee twenty different credit cards in his name, many of which had been issued in 2009. (Jucha Aff. ¶¶ 7-11). The Credit Union's general counsel similarly asserts that Plaintiff was turned away because of "concerns regarding Mr. Chizh's character, background and intentions in opening a new member account." (Sosnowski Aff. ¶ 10). Notably, Defendant's allegation that Belarusian nationality is no obstacle to membership is corroborated by Ilya Kunitski, a Belarusian who gained membership in the PSFCU in April 2010. (Pl.'s Aff. Exs. H, I).

Plaintiff seeks injunctive and declaratory relief, punitive damages, and compensatory damages for alleged pecuniary loss and emotional harm. Specifically, Plaintiff contends that he

was hospitalized and medicated in the psychiatric emergency department of Elmhurst hospital on February 21, 2010, and received medication again on March 15, 2010. (Compl. at 3).

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the movant meets this burden, the nonmovant must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The nonmovant cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through 'mere speculation or conjecture." *W. World*, 922 F.2d at 121 (citations omitted). Moreover, the disputed facts must be material to the issue in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)). When a party is proceeding *pro se*, the Court is obliged to interpret his papers "liberally and read such submissions to raise the strongest arguments they suggest." *Gildor v. U.S. Postal Serv.*, 179 Fed. Appx. 756, 757 (2d Cir. 2006) (citation omitted).

## III. DISCUSSION

In relevant part, the ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction on the basis of . . . national origin." 15 U.S.C. § 1691(a)(1). In order to establish a genuine issue as to a material fact under 15 U.S.C. § 1691a, the events and individuals Plaintiff describes in his complaint must conform to the statute's specific definitions. *Shaumyan v. Sidetex Co., Inc.*, 900 F.2d 16, 18 (2d Cir. 1990). "Credit" has a particular meaning under subsection (d), namely "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691a(d). Significantly, subsection (b) defines an "applicant" for credit as "any person who applies to a creditor *directly for an extension, renewal, or continuation of credit*, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b) (emphasis added).[1] The ECOA further provides that applicants are entitled to a written statement explaining the reasons for any adverse action a creditor takes, 15 U.S.C. § 1691(d)(2), with "adverse action" later defined as a "denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).

Simply put, to present a question of material fact to a jury under the ECOA, a plaintiff must be an "applicant" for "credit," because, as the Second Circuit has held, "absent a right to defer payment for a monetary debt, property or services, the ECOA is inapplicable." *Shaumyan*, 900 F.2d at 18 (citing *Dunn v. American Express Co.*, 529 F. Supp. 633, 634 (D. Colo. 1982)).

---

[1] The corresponding Regulation defines "applicant" similarly, as "any person who requests or who has received an extension of credit from a creditor." Regulation B (Equal Credit Opportunity), 12 C.F.R. § 202.2(e) (1980). An "application" is an "oral or written request for an extension of credit that is made in accordance with procedures used by a creditor for the type of credit requested." 12 C.F.R. § 202.2(f) (1980).

6

Courts of appeals in other circuits have consistently agreed. *See, e.g., Robinson v. Veneman*, 124 Fed. Appx. 893, 896 (5th Cir. 2005); *Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 203 (4th Cir. 2002); *Riethman v. Berry*, 287 F.3d 274, 277 (3d Cir. 2002). Moreover, district courts in other circuits have made clear that opening a savings account is not an aspect of a credit transaction, since a savings account does not create a right to defer payment of a debt. *Butler v. Capitol Fed. Sav.*, 904 F. Supp. 1230, 1234 (D. Kan. 1995); *see also Dunn*, 529 F. Supp. at 634 (holding that issuance of a debit card did not grant right to defer payment of any debt and therefore transaction failed to meet definition of "credit" in 15 U.S.C. § 1691a(d)).

In the instant case, Plaintiff seeks to conflate the process of applying for membership with the process of applying for credit. He notes a statement on Defendant's website that a savings account with the bank "establishes eligibility for other accounts such as…Loans" (Pl.'s Aff. at 4), and argues that Defendant "prevents/stops applicants on the discriminative basis at the membership step which is a required part of a credit account and for a credit application." (*Id.* at 5.) Plaintiff argues that his request was to open "PLURAL accounts—meaning a credit account (see top left corner of https://wellsfargo.com/personal_credit/products/selector.jhtml),[2] a savings account and a checking account," and therefore qualifies as an application for credit. (*Id.* at 3). He asserts that the ECOA "protects not only people who filled a credit application, but also people who *intend* to apply for a credit account." (*Id.* at 4 (emphasis added)).

Neither the facts nor the law support this interpretation. A precondition for credit eligibility is different from an aspect of a direct application. For example, a bank may require a Social Security number in order to open a line of credit, but applying for a Social Security

---

[2] Plaintiff's reference here is unclear. The top left corner of this webpage is the Wells Fargo logo. Below it is the "Banking" tab, which lists the services the bank provides.

number is not considered applying for credit, and the rules governing each are different.[3] Similarly, applying for membership in a federal credit union or for a savings account does not automatically constitute a direct application to a creditor for an extension of the right to defer payment. No court has read a requirement into the ECOA that federal credit unions must apply the rules governing an application for a credit card, personal loan, vehicle loan, mortgage or other extension of credit when considering an application for a savings account, a checking account or membership in the organization. In fact, as in *Dunn* and *Butler*, courts have done just the opposite.

As Plaintiff did not become a member of PSFCU, he concedes that he never applied for a credit card, loan or mortgage. (Pl.'s Resp. ¶ 6; Sosnowski Aff. ¶ 11). Indeed, Defendant asserts—and Plaintiff does not contest—that applying for credit at the PSFCU requires a separate application and review process, including a credit check, which Plaintiff did not undergo. (Sosnowski Aff. ¶¶ 9, 13-15; Pl.'s Resp. ¶ 6). Accordingly, Plaintiff's actions were outside the scope of the ECOA's corresponding regulation, which clarifies that any "application" must be "made in accordance with procedures used by a creditor for the type of credit requested." 12 C.F.R. § 202.2(f).

Plaintiff attempts to buttress his argument by citing to two district court decisions in other circuits: *Cragin v. First Fed. Sav. & Loan Ass'n*, 498 F. Supp. 379 (D. Nev. 1980), and *Haynie v. Veneman*, 272 F. Supp. 2d 10 (D. D.C. 2003). Neither case is relevant here as the plaintiffs in both made direct applications for loans.[4] There is nothing in the statute or case law to suggest

---

[3] For instance, Social Security does not require prior credit history, and banks do not generally require birth certificates. *See, e.g.*, Social Security Administration Form SS-5; Bank of America – Credit Card Application, https://www5.bankofamerica.com/creditcards/application/process.action (last visited June 28, 2011).

[4] The district court's decision in *Cragin*, finding that a plaintiff's *prima facie* case must always contain elements similar to those required under either the adverse impact or the disparate treatment tests used under Title VII, was just as unrelated to Plaintiff's case as the 9th Circuit decision overruling *Cragin* two years later. *Miller v. Am. Exp.*

that Plaintiff's application for membership in the PSFCU, which affords only the right to open a deposit account, constitutes an "aspect of a credit transaction" under the ECOA, or that Plaintiff was an "applicant" for "credit." Plaintiff's assertion that the ECOA also entitles him to a more thorough explanation of his membership rejection than that provided in Defendant's letter of January 11, 2010 (Pl.'s Aff. at 5) is unavailing for the same reason. Plaintiff's claim fails as a matter of law, and accordingly, Defendant is entitled to judgment dismissing this action.

IV.  **CONCLUSION**

For the reasons set forth above, Defendant's motion for summary judgment (Docket Nos. 16-22) is granted, and this action is dismissed in its entirety. The Clerk of Court is directed to enter judgment in accordance with this order and to close this case.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: July 6, 2011
Brooklyn, New York

---

*Co.*, 688 F.2d 1235 (9th Cir. 1982) (holding that automatically cancelling a spouse's supplementary credit card account upon the death of the primary cardholder violated the ECOA's provision barring creditors from discriminating with respect to any credit transaction on the basis of marital status).